378

## 20282

SOUTH CAROLINA INSURANCE COMMISSION, Petitioner-Plaintiff, v. The SOUTH CAROLINA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, Respondent-Defendant.

(228 S. E. (2d) 273)

*Messrs. Daniel R. McLeod, Atty. Gen., Victor S. Evans, Dep. Atty. Gen., A. Camden Lewis* and *John L. Choate, Asst. Attys. Gen.,* of Columbia, *for Petitioner-Plaintiff,*

*Messrs. Charles W. Knowlton* and *George S. King, Jr.,* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for Respondent-Defendant,*

September 9, 1976.

LEWIS, Chief Justice.

We assumed original jurisdiction of this case upon the petition of the South Carolina Insurance Commission (petitioner) in order to determine the obligation of the South Carolina Life and Health Guaranty Association (respondent), under the guaranty provisions of Code Section 37-561 *et seq.,* to the policyholders of New South Life Insurance Company (New South). This litigation arises out of the insolvency of New South. Since the financial difficulties of New South began prior to the effective date of the guaranty statute in question, the real issue is whether the subsequently provided protection of the statutes is available to New South policyholders.

In order to provide protection for insurance policyholders and to maintain confidence in the promises of insurers, the General Assembly of this State has enacted two insurance guaranty statutes. The provisions of the one with which we are here concerned are found in Code Section 37-561 *et seq.,* which deals with life and health insurance; the other is Code Section 37-821 *et seq.* dealing with other various kinds of direct insurance.

Section 37-566 creates a Life and Health Guaranty Association, composed of all insurers transacting any affected insurance, for the purpose, as stated in Section 37-562, "to maintain public confidence in the promises of insurers by providing a mechanism for protecting policy owners, insureds, beneficiaries, annuitants, payees and assignees of life insurance policies, health insurance policies, annuity contracts, and supplement contracts, *against failure in the performance of contractual obligations due to the impairment of the insurer issuing such policies or contracts.*" (Emphasis added).

Respondent is the guaranty association created by Section 37-566 and its general powers and duties with respect

to the protection of policyholders against failure in the performance of contractual obligations by the insurer are set forth in Section 37-568. It is conceded that New South is a South Carolina insurance company. Section 37-568 has two provisions dealing with domestic insurers such as New South, whose ability to perform their contractual obligations have become impaired.

Section 37-568(1) applies to an impaired insurer prior to an order of liquidation or rehabilitation and provides that the Association (respondent) *may* take certain specified action to assist the impaired insurer. This provision is not mandatory but simply gives to the Association the option to exercise its authority to minimize the losses. An order of rehabilitation was issued in this case, thus the optional provision does not apply.

Section 37-568(3) applies to an impaired insurer which is under an order of liquidation or rehabilitation and provides that the Association *shall* take certain action to guarantee the contractual obligations of the impaired insurer. Petitioner seeks in this case to require the respondent Association to apply these mandatory provisions to New South, contending that the company is an *impaired insurer* within the meaning of the statutes.

Section 37-565(6) defines an impaired insurer as follows:

"(a) An insurer which after July 14, 1972 becomes insolvent and is placed under a final order of liquidation, rehabilitation, or conservation by a court of competent jurisdiction, or

(b) An insurer deemed by the Commissioner after July 14, 1972 to be unable or potentially unable to fulfill its contractual obligations."

New South has been engaged in writing life and health insurance in this State since about 1955. In October 1971, the Chief Insurance Commissioner learned from company officials that New South was in financial difficulty. The

record shows that the company was insolvent at that time and so considered by the Commissioner. Thereafter on March 29, 1972, the Commissioner filed a petition in the Court of Common Pleas for Richland County alleging that the liabilities of New South exceeded its assets and asking to be appointed as rehabilitator of the company pursuant to the statutes pertaining to insolvent insurers. On June 5, 1972, the Court of Common Pleas approved a plan of rehabilitation for the company. There was no appeal from this order.

The court approved a plan of rehabilitation that permitted New South to continue in business provided it met certain minimum standards. The plan attempted to create a solvent company by the mechanism of creating a lien on the loan or surrender values of certain policies issued by the company and directing that the amount of the liens so created be shown as an asset on the company's books. By so doing, the books of the company showed a judicially created asset of approximately $13,000,000.00 which, presumably made it possible to show a resulting excess of assets over liabilities.

New South was thus permitted to continue its operations. However, beginning in early 1975, the Chief Insurance Commissioner and, subsequently, petitioner determined that New South was "potentially unable to fulfill its contractual obligations to policyholders" and directed that respondent guarantee the contractual obligations of New South under the mandatory provisions of Code Section 37-568(3). Respondent's refusal to do so precipitated this litigation.

The above quoted provisions of Section 37-565(6) clearly show that the statute in question is to be applied prospectively since both events which create an *impaired insurer* must occur after July 14, 1972.

> The record conclusively shows that New South was insolvent prior to July 14, 1972, the effective date of the Act, and was so considered by the Chief Insur-

ance Commissioner when he filed his petition seeking to be appointed rehabilitator for the company and by the lower court when it approved the plan of rehabilitation in June 1972. This is clear from the allegations of the petition of the petitioner on March 29, 1972 and the finding by the court in the order of rehabilitation of June 5, 1972 that the liabilities of New South exceeded its assets.

We also conclude that the order of rehabilitation, issued on June 5, 1972, was a "final order of . . . , rehabilitation . . . ," within the meaning of Section 37-565(6), *supra.* The order of June 5, 1972 was issued pursuant to a prior intermediate or interlocutory order, appointing the Commissioner as rehabilitator and directing New South to formulate a plan of rehabilitation, and set forth an extensive plan for rehabilitation of the company.

There was no appeal from the order of June 5, 1972 and the order approving the plan of rehabilitation became final before July 14, 1972, the effective date of the Act. While the order retained jurisdiction to issue further orders if appropriate, this did not render it any less a final order, but was simply a recognition that rehabilitation was a continuing process necessitating further aid of the court to effectuate the plan. The order of rehabilitation was a final order as opposed to interlocutory, which is the meaning of the statute when it refers to a "final order."

New South was therefore insolvent and under a final order of rehabilitation prior to July 14, 1972. It was accordingly an *impaired insurer* prior to the effective date of Code Section 37-561 *et seq., supra,* thus rendering the guaranty provisions of the statute inapplicable to New South policyholders.

Petitioner contends, however, that the treatment by the lower court of the "lien" placed on the cash value of all of New South's policies as an asset rendered the Company solvent. Thus it is reasoned that New South was rendered solvent by the order of rehabilitation prior to July 14, 1972,

the effective date of the Act; and that the subsequent determination by the Commissioner in early 1975 that New South was "potentially unable to fulfill its contractual obligations" made New South an *impaired insurer* as defined under the above quoted provisions of Section 37-565(6)(b).

This argument turns upon whether the "lien" placed by the lower court on the cash values of the policies of New South could be validly treated as an asset so as to restore the company's solvency. If so, only then would we reach the question of whether New South became an *impaired insurer* after July 14, 1972 by virtue of the Commissioner's determination in early 1975. However, if the "lien" was not an asset so as to restore the solvency of New South then, as we have previously pointed out, the Company became an *impaired insurer* prior to July 14, 1972, since it was at the time (1) insolvent and (2) under a final order of rehabilitation.

Many policyholders of New South held policies upon which cash surrender values had accrued. These cash values constituted a contractual obligation owed by the Company to the policyholders and were immediately payable upon demand. Code Section 37-297.16 authorizes the placement of a lien on the cash values of the policies of an insurance company under rehabilitation. The obvious purpose of such a lien is to prevent a "run" on the insolvent company for cash surrenders of policies.

The court in this case established the lien authorized by the statute on the cash surrender value of the policies of New South. This it was authorized to do in order to establish a moratorium with respect to such payments.

The court, however, went further and, in the order of rehabilitation, directed the treatment of the lien, established to defer the payment of the contractual obligations of New South, as an asset of the Company so as to establish the company's financial integrity to continue in the insurance business. There has been no authority cited,

nor have we found any, which authorizes the use of the lien on the cash values of the policies as an asset on the books of the company. The cash value of the life insurance policy is a debt owed to the policyholder and it cannot be transformed into an asset of the company by court decree.

Since New South became an *impaired insurer* prior to the effective date of the statute in question, the relief sought is denied and the petition dismissed.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.