23357

Malcolm M. BABB, Respondent/Appellant v. Thomas B. ROTHROCK, Ronny E. Hendrix, and Raymond S. Schild, Defendants, of whom Raymond S. Schild is Appellant/Respondent, and Ronny E. Hendrix is Respondent/Appellant.

(401 S.E. (2d) 418)

Supreme Court

*James B. Van Osdell* and *Cynthia Graham Howe*, of *Van Osdell, Lester, Howe & Rice, P.A.*, Myrtle Beach, *for appellant/respondent Raymond S. Schild.*

*Frank H. DuRant*, Myrtle Beach, *for respondent/appellant Ronny E. Hendrix.*

*T.E. Pedersen*, Charleston, and *James B. Richardson, Jr.*, of *Svalina, Richardson & Smith*, Columbia, *for respondent/appellant Malcolm M. Babb.*

Heard Feb. 6, 1991.

Decided Feb. 25, 1991.

CHANDLER, Justice:

This litigation between four shareholders of a defunct corporation is here on direct appeal from the Master-in-Equity to whom it was referred for final judgment.

We affirm in part and reverse in part.

## I. FACTS

In January, 1982, Anchor Management, Inc. (AMI) was incorporated to manage Myrtle Beach resort property. Its shareholders were Thomas B. Rothrock, Ronny E. Hendrix, and Raymond S. Schild. Thomas Crowley was hired as general manager and elected president of the corporation, but owned no stock.

By the end of 1982, AMI needed additional working capital. On January 15, 1983, it entered into a written agreement with Malcolm M. Babb, whereby Babb purchased $10,000 in stock and loaned AMI $15,000.

In March, 1983, AMI purchased computer equipment and software to better administer its rental operations. To finance the purchase, AMI obtained loans from Anchor Bank, evidenced by notes in the amount of $32,000 and $18,000, both of which were guaranteed, unconditionally, by Babb and Hendrix. Although Schild and Rothrock never executed any written guaranty, Babb alleges that they, too, agreed to personally guarantee payment of the notes.

In August, 1983, with AMI's financial condition deteriorating, Babb and Crowley assumed management of the business. Shortly thereafter, the assets were sold to Shelter Management, Inc.

After the sale to Shelter, Babb satisfied the indebtedness to Anchor Bank, which then totalled $50,690.03. He later joined two other corporate creditors to have AMI placed in involuntary bankruptcy.

Thereafter, Babb commenced this action against Rothrock, Hendrix, and Schild, seeking, among other things, contribution for his payment of AMI's indebtedness to Anchor Bank. Defendants counterclaimed for a setoff, alleging that Babb had misappropriated assets of AMI. The Master held each defendant liable for contribution, but granted setoff for amounts Babb was found to have misappropriated from AMI.

## II. ISSUES

Although the parties have raised several issues, we need address only the Master's allowance of a setoff.

## III. DISCUSSION

Babb contends that the defendants lack standing to assert their counterclaim for misappropriation of *corporate* property. We agree. It is firmly established by our decisions that individual shareholders may not sue corporate directors or officers directly for losses suffered by the corporation. *See, e.g., Johnson v. Baldwin*, 221 S.C. 141, 69 S.E. (2d) 585 (1952); *Davis v. Hamm*, 300 S.C. 284, 387 S.E. (2d) 676. (Ct. App. 1989).

Defendants, relying upon *Thomas v. Dixon*,[1] contend that an exception to the general rule should be recognized under the circumstances here. In *Thomas*, the Georgia Supreme Court allowed a direct shareholder suit for misappropriation of corporate assets where the underlying reasons for requiring a derivative action were absent.

Assuming we should adopt the *Thomas* exception, these defendants would not be entitled to its benefit. Unlike in *Thomas*, here the record discloses the presence of a reason compelling a derivative action, to wit, protection of corporate

---

[1] 250 Ga. 772, 301 S.E. (2d) 49 (1983).

creditors. AMI has disposed of its assets and is bankrupt. The claims of corporate creditors may be jeopardized if individual shareholders are permitted to satisfy their personal debts by raising a claim which can only be asserted by the corporation. As between the creditors and shareholders, the interest of the creditors must prevail. *See Insurance Comm'n v. New South Life Ins. Co.,* 270 S.C. 612, 244 S.E. (2d) 289 (1978); *Beckroge v. South Carolina Power Co.,* 197 S.C. 184, 15 S.E. (2d) 124 (1941).

Next, defendants contend that a shareholder action may be brought directly against the wrongdoer so long as any recovery is equally divided among all shareholders. Their reliance upon *Ward v. Griffin*[2] is misplaced. In *Ward,* the trial court indicated that a direct action was proper under such circumstances; however, the Court of Appeals refused to address the question, since it was not argued on appeal. In any event, it would be impermissible where, as here, prejudice may result to corporate creditors.

## IV. CONCLUSION

We reverse that portion of the judgment allowing defendants a setoff based upon Babb's misappropriation of corporate property. Remainder of the judgment is affirmed pursuant to Supreme Court Rule 23. *See Costas v. First Fed. Sav. & Loan Ass'n,* 283 S.C. 94, 321 S.E. (2d) 51 (1984) (attorney fees); *Wigfall v. Fobbs,* 295 S.C. 59, 367 S.E. (2d) 156 (1988) (fraudulent and negligent misrepresentation); *Klutts Resort Realty, Inc. v. Down 'Round Dev. Corp.,* 268 S.C. 80, 232 S.E. (2d) 20 (1977) (pro rata liability); *Tiger, Inc. v. Fisher Agro, Inc.,* ___S.C. ___, 391 S.E. (2d) 538 (1989) (personal guaranty); *Player v. Chandler,* 299 S.C. 101, 382 S.E. (2d) 891 (1989) (Statute of Frauds).

Affirmed in part, reversed in part.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.

---

[2] 295 S.C. 219, 367 S.E. (2d) 703 (Ct. App. 1988).