Joe MINOR, Walter E. Jorgenson, Gerald Lundergan, and Charles F. Helm, Jr., Appellants,

v.

Don W. STEPHENS, Commissioner of the Kentucky Department of Insurance, Appellee.

PLAZA B.V. and Lagalee Finance, Inc., Appellants,

v.

Don W. STEPHENS, Commissioner of the Kentucky Department of Insurance, Appellee.

Nos. 94–SC–813–TG, 94–SC–805–TG and 94–SC–814–TG.

Supreme Court of Kentucky.

May 11, 1995.

As Modified July 6, 1995.

Ronald A. Newcomer, Lexington, Karl L. Rubinstein, Robert H. Nunnally, Jr., Rubinstein & Perry, Los Angeles, CA, for Joe Minor, Walter E. Jorgenson, Gerald Lundergan, and Charles F. Helm, Jr.

William P. Curlin, Jr., Hazelrigg & Cox, Frankfort, Mitchell A. Karlan, Gibson, Dunn & Crutcher, New York City, for Plaza B.V. and Lagalee Finance, Inc.

Steven L. Beshear, Janet A. Craig, Stites & Harbison, Lexington, Robert Michael Connolly, Charles J. Cronan, IV, Louisville, Judith A. Villines, Stites & Harbison, Frankfort, for Don Stephens, Com'r of the Kentucky Dept. of Ins.

James H. Newberry, Jr., Susan C. Sears, Newberry, Hargrove & Rambicure, Lexington, Kevin Griffith, Charles T. Richardson, Baker & Daniels, Indianapolis, IN, for Nat. Organization of Life and Health Ins. Guar. Ass'n,

Illinois Life & Health Ins. Guar. Ass'n, and Texas Life, Acc., Health & Hosp. Service Ins. Guar. Ass'n.

REYNOLDS, Justice.

This case arises out of the claims of nonvoting shareholders of Kentucky Central Life Insurance Company (KCL), which company had been placed into rehabilitation/liquidation proceedings by the Kentucky Commissioner of Insurance.[1]

The factors and issues of this case are the same or similar to those set forth in *Kentucky Central Life Insurance Company v. Don W. Stephens, Commissioner of the Kentucky Department of Insurance*, Ky., 897 S.W.2d 583 (1995) released this date, which sets out the background and the course which these litigants have pursued.

The action referenced aforesaid was litigated by the board of directors of KCL, however, the nonvoting shareholders herein were afforded a limited status despite KCL's virtual representation of them whereby their interests (being the same as that of the board) were represented by a party to the litigation.

The nonvoting shareholders declare the trial court erred by denying their motion for the appointment of an official committee to protect their interests. Their motion for appointment was denied, as was the collateral motion seeking to intervene. Appellants cite no statutory authority to support their position. Within the plethora of pleadings, the shareholders have distinctly acknowledged that rehabilitation and liquidation of an insolvent insurance company is a special statutory proceeding and that the application and utilization of special statutory rules may be left largely to the supervision of the trial judge in the exercise of sound judicial discre-

---

1. This Opinion relates to the third of the three cases argued orally before the Supreme Court at its March 1995 term.

tion. Subtitle 33 of Chapter 304 of the Kentucky Revised Statutes does not authorize the appointment of a shareholders' committee, although the trial court may, under extraordinary conditions, grant such a request.

The shareholders cite *Ainsworth v. Old Security Life Ins. Co.*, 694 S.W.2d 838 (Mo. App.1985), which permitted the sole stockholder of a corporation in receivership to intervene where the receiver's attorney sought to claim substantial additional compensation for services rendered by the attorney to the receiver. Therein, the shareholder was, in effect, the alter ego of the corporation. *Ainsworth* is distinguishable since the defunct corporation had a substantial sum in the amount of $20 million for distribution after payment of all claims and administrative expenses, and the receivership action was not treated as a special statutory proceeding.

Also distinguishable is *Commonwealth ex rel. Chidsey v. Keystone Mutual Casualty Co.*, 366 Pa. 149, 76 A.2d 867 (1950). In that case, leave to intervene was granted to the insurance company's mutual policyholders committee. A mutual insurance company relegates to a policyholder simultaneous attributes that a shareholder ordinarily enjoys. Therein there is a difference and distinction, as a mutual insurance company is a cooperative enterprise and the policyholders, as members, occupy the distinctly unique position of being both insurers and insureds. Upon insolvency of such a mutual company, policyholders, as members, are liable for their proportionate share of indebtedness. The policyholders' committee was permitted to intervene because, as a mutual insurance company, the proceeding may impose liability upon them, but such is not the situation herein.

■■■ The shareholders herein have failed to establish the necessity and purpose for such a committee. KCL's board of directors, which is permitted by statute to resist liquidation, advanced the cause of both the company and the shareholders in its motions and arguments at the hearing. The appellants have contended that as they have not been informed as to the progress of the case, a shareholder's committee was needed to protect their interests. The statutes are designed to provide a comprehensive, efficient, and orderly procedure for liquidating insurance companies while protecting the rights of interested parties. Statutorily, the Commissioner is the appointed person in exclusive control over the proceedings, with guidance and approval provided by the court.

■■ The nonvoting shareholders do not assert that the board of directors of KCL failed to protect their interests or any special aspect thereof. KRS 304.33–180(1) states that the board of directors has leave to protest liquidation. Statutory authority is granted to no other party. The trial court did not approve the shareholders' various motions to intervene and conduct discovery, but did permit the shareholders to meaningfully participate to the extent that their counsel, through the board of directors, joined in the May 1994 proceedings. Nonvoting shareholders were extended rights of a party who might give notice of an intent to appear pursuant to the court's order of February 9, 1994. Additionally, they were granted access to all documents and other information which KCL had or would have access to. The shareholders were granted the right to offer their own expert witness and submit alternative proposals. The hearing extended from May 3, 1994, to May 26, 1994, with the record left open for additional depositions and briefs to be filed on behalf of all persons participating in the hearing, and with proposed findings of fact and conclusions of law to be tendered by the board of directors and shareholders and the Commissioner. The shareholders' allegation that they were not informed of the progress of the case or given an opportunity to participate is without validity.

■■ The Commissioner is best qualified to perform the rehabilitation/liquidation process as he has no special interest in the outcome except to administer the matter for the maximum benefit of all interested parties. The Commissioner's accountability, fiduciary duties to all interested parties, and the orders entered by the court make it reasonably clear that safeguards existed which enabled detection of any violations of duty which

could have imperiled the shareholders' interests. *In the Matter of the Liquidation of Integrity Ins. Co.*, 231 N.J.Super. 152, 555 A.2d 50 (Ch.1988).

█ The shareholders maintain that the trial court erred by failing to determine that the Commissioner neglected a statutory duty to rehabilitate KCL. The Commissioner, by his petition to Franklin Circuit Court, submitted the grounds for liquidation of KCL pursuant to KRS 304.33–180(1), having arrived at the conclusion that the insurer was irretrievably insolvent. This determination flowed from the evidentiary record that developed during the course pursued by the Commissioner, such course being a rehabilitation route which sought an infusion of capital which would have permitted KCL to resume more normal operations. In the course of rehabilitation efforts, the Commissioner acted on advice from legal, accounting and actuarial experts. Initially, the Commissioner created a detailed offer and bid process for KCL's insurance business, which consisted of two alternatives. The first (pure rehabilitation) was for an infusion of capital from outside investors. The second was for the purchase, through assumption reinsurance of all or substantially all of KCL's life insurance business. No investor willing to infuse capital submitted a bid on KCL's assets. The trial court's findings of fact enumerated as Nos. 29 through 35 are decisional as to this less than persuasive argument.

The shareholders rely upon *In the Matter of the Liquidation of American Mutual Liability Ins. Co.*, 417 Mass. 724, 632 N.E.2d 1209 (1994), to advance an argument that this was not an "abuse of discretion standard" case, but one in which the Commissioner must demonstrate that his actions were fair and reasonable. That case started with a "one-justice" review seeking court approval of settlement of claims against an insolvent insurer's former accountant and auditor. The accountant's claim for professional services, bears little relationship to a policyholder's priority/rights, being a distinguishable classification. The trial court herein correctly denied intervention and the formation of an official committee of nonvoting shareholders.

█ In essence, the shareholders state that the Commissioner/circuit court attempted to end the self-rehabilitation effort by pronouncing that the JP plan is fair in all respects to policyholders, creditors, and shareholders. Thus, the findings of the circuit court are argued to be erroneous. The shareholders assert that the plan credits policyholders on their account values based upon an arbitrary index—100 basis points above the five-year treasury rate, 7.33 percent as of December 13, 1994, on Universal Life policies, and 25 basis points above the five-year treasury rate for annuities. Despite the shareholders' argument, we are referred to no evidence, nor do we find any in the record, that the Commissioner's plan provided an above-market return to the policyholders. The trial court found that because of the moratorium and other restrictions on policies, use of a market crediting rate was appropriate. As a result, under the JP plan, if assets transferred to JP combined with the interest credited by JP are inadequate to pay the guaranteed credit rates, then the assets of KCL must further subsidize the policyholders.

The policyholders are reasonably entitled to the benefit of their purchase and that which they reasonably expected from the policy or annuity contracts. The policyholders had bargained for a competitive interest rate. The Commissioner's plan would allow them to receive a rate with a slight enhancement, if there is sufficient values to be realized from KCL's assets. Some compensation was permitted to policyholders for the problems/difficulties encountered in the insolvency process *Cf. Baldwin–United Corp. v. Garner*, 283 Ark. 385, 678 S.W.2d 754 (1984).

█ From a heightened review, and considering a balancing of rights, the rehabilitator/liquidator cannot discriminatorily grant rights to one person while denying them to another under like circumstances. In essence, the Fourteenth Amendment provides that there be no arbitrary deprivation of life or liberty or arbitrary spoliation of property. *See Truax v. Corrigan*, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254 (1921). The purposes advanced by the Commissioner by recommend-

ing the JP plan to credit the policyholders' account values at a rate in excess of 4½ percent must be found to be legitimate. Although the shareholders speak of deprivation and discrimination and the unconstitutionality of same, it is to be recognized that when economic legislation is at issue, the equal protection clause allows the states latitude. This may be sustained when serving a compelling state interest. *See City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

KRS 304.33–430 permits the placement of the policyholders' interests above the shareholders' interests. The purpose of the rehabilitation and liquidation subtitle of the Insurance Code is "the protection of the interests of insureds, creditors and the public generally, with minimum interference with the normal prerogative of proprietors." Shareholders are reminded that they are at the end of the line when assets are distributed, while policyholders are at the other end of the spectrum after administrative expenses. The plainly stated intent of the statutes is to protect policyholders to the fullest possible extent. The Insurance Code prohibits the placement of any lien on the policyholders' equity until all rights of shareholders are first extinguished. KRS 304.33–160(5). The return of assets to shareholders is prohibited, for example, until the guaranty associations are repaid for payments extended to policyholders. KRS 304.33–075. Assuredly, the statutory intent is to fully protect the interests of the policyholders.

To the contrary, the shareholders maintain that it makes no difference that the policyholders bargained for a competitive rate of interest and have, by virtue of the company's insolvency and the proceedings flowing therefrom, been prohibited from receiving that rate for over two years. In a further effort to tilt the scales, the shareholders advance the argument that the policyholders are not entitled to, but should be charged for reimbursement from KCL's assets for the increased administrative charges/surrender charges set forth in the Commissioner's plan, even though such charges were not a part of

the policyholders' original contracts. Such charges are not uncommon as they assist to maximize an insolvent insurer's business as to its selling price, along with a purchaser's program to protect its long-term investment during the earlier years of the acquisition plan. In short, it is the philosophy of the shareholders that the policyholders' losses should be disregarded or greatly discounted and that their right to be made whole become subordinated to shareholders' interests. The insurance statutes patently prohibit the ingenious argument advanced by the shareholders. Such a position serves only to create shareholders' value at the singular expense of the policyholders.

We are not convinced by the stockholders' argument that excessive payments are to be directed to the policyholders, nor that there is an excessive amount to be paid to Jefferson Pilot under the plan approved by the court. All claimants have prioritized standing. KRS 304.33–430. In accordance with the insurance statutes, the Commissioner has undertaken to rehabilitate/liquidate the business of KCL. Such authority, if exercised, is an aspect of the police powers of the state, and while it is substantial, it is not boundless. We note that the basic parameters are reflected in *Carpenter v. Pacific Mutual Life Ins. Co. of California,* 10 Cal.2d 307, 74 P.2d 761 (1937). The test against which the court must judge a plan of rehabilitation/liquidation must relate to the standard and requirements of the statutory provisions governing insurance insolvency proceedings. If the plan appears to be satisfactory, the court should defer to the executive judgment of the Commissioner and approve the plan. We believe the provisions of the plan meet the standard, which is not divergent from the *Carpenter* standard. *See Commercial National Bank in Shreveport v. Superior Court (Garamendi),* 14 Cal.App.4th 393, 17 Cal.Rptr.2d 884 (2 Dist.1993).

The shareholders, opposing the liquidation of KCL, claim error upon its placement into a liquidation status and assert that it was error to find a condition of insolvency. Certainly, insolvency is partly in the eye of the beholder, but from the great weight of evidence, almost comparable to a litany of

the saints, the record demonstrated that KCL was insolvent and the findings of fact will not be set aside unless clearly erroneous. In this case the trial court made detailed findings of fact that were supported by the record, and had the findings not been supported by the evidence, it was for the nonvoting shareholders to demonstrate that the findings were clearly erroneous. *Citizens Fidelity Bank & Trust Co. v. Leake*, Ky., 380 S.W.2d 264 (1964). Said otherwise, the shareholders' argument is without merit.

The issues raised by the nonvoting shareholders—deprivation of their constitutional rights and a failure by the Commissioner to comply with the insurers' rehabilitation and liquidation law—are answered in part by a substantive recitation of the facts in the record.

The Commissioner's primary concern was the design of a plan which would secure policyholder values. His experts proposed four options to further the primary goals, inclusive of rehabilitation. The options considered were: (1) an infusion of capital from outside investors; (2) an assumption reinsurance agreement which would provide that a viable insurer would receive some company assets in return for the assumption of primary liability for the policies; (3) immediate liquidation; and (4) indemnity reinsurance with another insurer whereby KCL would remain a primary obligor and a reinsurer would become secondarily liable in return for transfer of KCL assets. The experts did not, however, recommend either the third or fourth optioned plans.

A detailed offer and bidding process which concerned only options one and two of such plan was developed. Throughout all processes, no capital-infusion-type bid was received. Chronologically the record reflects that it was ascertained during this period that the true valuation of KCL's real estate and mortgage loan assets disclosed a $141 million deficit, which subsequently resulted in disposal of part of the assets by group sales. KCL was perceived to be deeply insolvent.

A self-rehabilitation committee of KCL employees was established and the Commissioner, although not statutorily obligated, permitted the committee to operate and to undertake independent efforts to establish some means of rehabilitation. A member of the current KCL board of directors participated on the committee and the Commissioner provided actuarial assistance. The committee actively, but unsuccessfully, contacted potential investors. The shareholders assert that although a limited amount of informal discovery was allowed, the Commissioner failed to turn over documents crucial to KCL's defense, to the prejudice of the shareholders; but, the record discloses otherwise.

In February 1994, the Commissioner sought approval of a reorganization and reinsurance plan and a petition for liquidation. Notice of hearings was sent to all shareholders, creditors, and policyholders. The shareholders, interested in the rehabilitation, utilized a representative, The Firemark Group, which was among the groups that signed confidentiality agreements and reviewed the data room documents prior to any of the bidding processes. Subsequently, after the filing of the petition for liquidation, the board exercised its statutory right to defend against the liquidation. The trial court granted the board's request to take formal discovery, but directed that it be done on an expedited basis. Although the board previously had access to the data room since May 1993, (via its representative, The Firemark Group) it was again afforded access to the thousands of documents contained therein. The board's request for further documents was granted. The board's counsel had access to all the witnesses that it sought to interview. The court limited questioning to four hours per witness, but in fact unrestricted questioning was permitted. The testimony in question was both recorded and transcribed and such transcripts were used by the board at the subsequent hearing. The hearing before the trial court proceeded despite the board's attempt to extend/delay the proceeding. The board's counsel was permitted to cross-examine, at length, all witnesses produced by the Commissioner. The board subpoenaed witnesses and called all witnesses it desired. The record discloses that the court permitted the board to employ an accounting firm for its use and to hire other experts at their expense. The court

allowed presentation of an alternative plan contending to be a self-rehabilitation program.

It is asserted that no genuine effort was made to rehabilitate KCL. Such an argument lacks strength in view of the Commissioner's efforts to procure infusions of cash, along with the consideration of alternative plans of self-rehabilitation. Consider further that when the open bid process plans were devised, the primary step sought an infusion of capital without success. An adequate record exists upon which to base the trial court's finding that further attempts to rehabilitate KCL would substantially increase the risk of loss to policyholders and creditors and would be futile.

■■■ The purpose of Subtitle 33 of Chapter 304 of the Kentucky Revised Statutes (KRS 304.33–010) is the protection of the interest of the insured, creditors, and the public generally, with minimum interference with the normal prerogative of the proprietors. The subtitle, which embodies the liquidation provisions, has been enacted in similar form by most states for the purpose of handling financially troubled insurance companies. Further, it provides a basic framework to be followed by insurance commissioners and the courts when intervention in management becomes necessary. The subtitle provides Franklin Circuit Court broad discretion as to supervision of the proceedings. KRS 304.33–040 pertains to the exclusiveness of proceedings and states that the court shall have exclusive jurisdiction over all matters relating to the proceeding, including all disputes over assets. The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the subtitle. Section (3)(c) states that no provisions in the subtitle shall be construed to preclude the court from, on its own motion, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process.

■■■ KRS 304.33–160(2) extends to the Commissioner broad discretion in his efforts to rehabilitate the company and provides that as rehabilitator the Commissioner may take such action as deemed necessary or appropriate to reform or revitalize the insurer. Full powers are granted to deal with the property and business of the insurer. The right to propose a plan of reorganization and reinsurance, if determined to be necessary, is granted to the Commissioner. KRS 304.33–160(5). Certainly, the Commissioner is a creature of statute and has no authority except that which the statute confers upon him. *See Allin v. American Indemnity Co.*, 246 Ky. 396, 55 S.W.2d 44 (1932).

■■■ The business of insurance is affected with a public interest and the state has an important and vital interest either in the liquidation or reorganization of such a business. Neither the insurance company nor policyholders have inviolate rights that characterize ordinary private contracts. The policyholders' contracts as well as others with interest in the company, are subject to a reasonable exercise of state police power. We agree with KCL's statement that rehabilitation is preferable to liquidation, but this ideal cannot survive the trial court's measured finding that "[f]urther attempts to rehabilitate Kentucky Central Life would substantially increase the risk of loss to policyholders and creditors and would be futile."

■■■ The nonvoting shareholders state that prior to the commencement of liquidation, there is a requirement of proof that rehabilitative efforts would substantially increase the risk of loss or be futile. Proof, as in this case, may take on several forms and a rehabilitator is granted authority to make judgments and take actions he believes to be in the public interest. The trial court's primary role is a supervisory one and the standard of the court's review of the rehabilitator's actions is one of abuse of discretion. Under the special statutory proceedings, the Commissioner is granted administrative discretion in the context of the insolvency/delinquency proceedings and the burden of proof is upon those contesting the Commissioner's actions. *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 614 A.2d 1086 (1992).

■■■ In determining whether rehabilitation should give way to liquidation, it is, of

course, important to consider the conditions and causes which led to the making of the order of rehabilitation. On the date that the Commissioner of Insurance met with the board of KCL and advised of his intentions to file these proceedings against the company, the board's decision was to agree and accept the Commissioner's actions. The statements made in the petition may be accepted as facts subsequently proved to the satisfaction of the trial court by virtue of its findings of fact. KCL, concededly, found itself unable to meet the fulfillment of its obligations. We have heretofore referred to these steps, among others, which were taken by the rehabilitator in an endeavor to improve KCL's condition, and without a rush to liquidation, the Commissioner, believing that further efforts to rehabilitate the company would be futile, instituted the liquidation proceeding. *See The Insurance Commission of South Carolina v. New South Life Ins. Co.,* 270 S.C. 612, 244 S.E.2d 289 (1978). Certainly, the business formerly done by the company was no longer available to it, and before the moratorium, the surrender of policies cascaded to $1 million per day. The distinct outlook for any improvement was becoming increasingly precarious with the passage of time. Something more than hope is necessary to justify the continuation of rehabilitation at the expense of the policyholders and general creditors. Circumstances obviously justified the conclusion of the Commissioner that further efforts to rehabilitate would serve no useful purpose.

▮ With the judgment of the Commissioner of Insurance being that liquidation was subsequently desirable and necessary, we determine that only a strong showing to the contrary would have justified the trial court's refusal to follow the recommendations of the administrative officers to whom the supervision of the insurance company was entrusted by the legislature. *In re New York Title & Mortgage Co.,* 156 Misc. 186, 281 N.Y.S. 715 (N.Y.Sup.1935).

▮ The trial court did not err by approving the bid process conducted by the Commissioner as well as the JP plan. The shareholders elaborate that the Commissioner's bid process unduly favored JP and that a relationship between JP and the Commissioner's Deputy Rehabilitator contaminated the bid process. We observe that inappropriate conversations took place between the Deputy Rehabilitator and JP's president, but we further note that the Commissioner, upon obtaining notice, responded properly and within the discretion. The deputy commissioner was removed from any further position of involvement relating to the bid process and did not impact the process. The trial court, upon receiving all such testimony, made a finding of fact that the integrity of the bid process was not prejudiced. Based upon such finding, no basis existed for disapproving the bid process.

The shareholders' reference to the case of *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3rd Cir.1986), is misplaced. To the contrary, the reasoning therein would support the trial court's finding that the bid was not tainted in this case, especially since it considered all the evidence and made a determination that a tainted bid process was not involved. The standard of review is mixed because it requires a determination of an ultimate fact. The standard for this Court is whether the trial court's findings were clearly erroneous.

A statement that JP was allowed complete control over the second round of bidding and was given secret postbidding renegotiated terms lacks evidentiary support or reference to the record alluding to such factors. To the contrary, the second phase of the bidding process resulted in JP rendering a $341 million bid for KCL's insurance business which, coincidentally, was the highest bid of all, being $50 million above the second bidder. The trial court entered such a finding along with one determining that the bid process was open, fair and calculated to attract the highest possible value for KCL. The holding of *Owensboro Grain Co. v. Owensboro Riverport Authority,* Ky., 818 S.W.2d 605 (1991), does not address the breadth of the facts nor the findings in this case. The first round phase of bidding resulted in JP's being selected as the lead bidder based upon the amount of its bid and its financial strength and ability to back KCL's obligation to policyholders. Herein, approaching the second

phase of the bid process, all first-round bidders were encouraged to increase their offered purchase price for KCL's insurance business.

The affairs of the bidding proceeding were not clandestine as evidenced by the meetings which included NOLHGA and experts.

■ It is asserted by the shareholders that an unjustified change in accounting methods resulted in write-downs of over $60 million in KCL's real estate assets. The only testimony which disclosed that the Commissioner did not follow statutory accounting principles came from an employee who was in charge of KCL's financial statements at the time that those records erroneously reflected inflated values of incomplete or improper appraisals. The argument at the time of the hearing was that the Commissioner was estopped from correcting book balances. With the condition of these records, the circuit court was correct in discarding this testimony. Substantial expert evidence exists to contravene this argument.

We find no improper change to the JP bid following the bidding process prior to acceptance nor is the plan legally defective. This is most apparent from the record which supports the court's findings, including Findings of Fact Nos. 35–40; 43–46; 50; and 59–63. The shareholders' citations do not support their argument. The policy and annuity holders' entitlement, in this case, was not founded upon a minimum guarantee, and especially since there is no evidence to disclose that the minimum had been firmly established, during the life of the policy, as the maximum guarantee. It was not error for the trial court to approve the JP plan as it meets due process requirements.

■ The due process clause does not restrict the state's reasonable exercise of its police power in furtherance of the public interest, even though such laws may interfere with contractual relations and commercial freedoms of private parties. *Warschauer Sick Support Society v. State of N.Y.*, 754 F.Supp. 305 (E.D.N.Y.1991). It is not enough that the Commissioner's plan affects shareholders' property rights. Instead, the shareholders/board must demonstrate

that it does so arbitrarily. *Golden Pacific Bancorp v. U.S.*, 15 F.3d 1066 (Fed.Cir., 1994). There appears to be no violation of the shareholders' procedural due process rights. The shareholders' property interests are defined by state law. While determining whether the process afforded is adequate, the court should consider the private interests affected, the governmental interests affected, and the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards. *Palmer by Palmer v. Merluzzi*, 868 F.2d 90 (3d Cir.1989). A case by case basis may more accurately determine the adequacy of procedure for due process purposes.

■ The shareholders maintain that the Jefferson Pilot plan would result in an unconstitutional taking of their property without just compensation. While the state has the power to regulate the insurance business, its power to regulate cannot be permitted to obscure the Bill of Rights. *See Kenton & Campbell Benevolent Burial Ass'n v. Goodpaster*, 304 Ky. 233, 200 S.W.2d 120 (1946). The legislative authority may not, under the guise of promoting public interest, arbitrarily interfere, and police power is not without limitations. Keynoting this reference is the phrase *arbitrary interference*. *Illinois Cent. R. Co. v. Commonwealth*, 305 Ky. 632, 204 S.W.2d 973 (1947). Certainly, extraordinary power is not without limitation, but in this case it has not been established by KCL's shareholders that the Commissioner has operated unreasonably or arbitrarily beyond the occasion and necessity of the situation.

■ In conjunction with the shareholders' objection to the JP plan, it is maintained that the trial court erred by approving the Commissioner's actions and recommendations. One primary thrust faults the process by which the Commissioner's plan was promulgated and approved. Otherwise, direct criticism of the plan wanes. The evidence is replete with the fact that KCL is irretrievably insolvent and that a fair and equitable plan for the reorganization and reinsurance of KCL's business was negotiated. An insolvent insurer has the burden of showing rehabilitation is feasible. *Shepherd v. Old Heritage Mutual Ins. Co.*, 492 Pa. 581, 425 A.2d 304 (1980). At no step during this litigation

has it been made evident that either creditors or policyholders have sought to displace or replace the plan. The plan beneficially provides for the policyholders as follows:

Preservation of full pre-rehabilitation life insurance protection regardless of current health or insurability.

Fully or partially covered policyholders will have 100 percent of their policy values protected at Closing by virtue of JP Life's enhancement and NOLHGA's additional financial support.

Policy values of non-covered policyholders will be restructured to reflect the value of assets transferred at Closing *and* JP Life's enhancement.

JP Life will credit a competitive interest rate to policyholder account values. The actual rate is tied to the yield on five-year Treasury obligations at Closing.

JP Life will credit a competitive interest rate on new life insurance premiums paid after Closing—one percent above the yield on five-year Treasury obligations on January 1st of each year, not to exceed the yield on five-year Treasury obligations at Closing, plus one percent.

Substantially all surrender, withdrawal, and policy loan rights will be restored for covered policyholders. Covered policyholders who surrender their contracts will receive the greater of the surrender benefits provided by the Life and Health Agreement or by the Participating Guaranty Associations.

Covered KCL policyholders, whose policies remain in force during the five year plan, will receive a five percent persistency bonus if it would improve the benefit otherwise provided under the Plan.

The shareholders' citations, again, are lacking in either relevance or persuasion. Such cases have little application to this case and do not require a different result. The shareholders declare the trial court applied an improper burden of proof. The nonvoting shareholders declare that the circuit court must apply a de novo standard of review. Proof, as in this case, may take on several forms and the Commissioner, in his role as rehabilitator/liquidator, is granted authority to take such action or make such

judgment as he believes to be in the public interest. The trial court's primary role is a supervisory one and the standard of the court's review of the Commissioner's actions is one of abuse of discretion. Under the special statutory proceedings, the Commissioner is granted administrative discretion in the contest of the insolvency proceeding and the burden of proof is upon those contesting the Commissioner's actions. *Foster, supra.* The shareholders' citation of *In re Liquidation of American Mutual Ins. Co., supra,* involved an issue of settlement awaiting an answer before a single justice on a receiver's motion for approval. The standard of review utilized in that case resulted from the wording of the insurance statutes involved therein.

The findings of fact and orders of Franklin Circuit Court are affirmed.

All concur.

THOMAS P. LEWIS, Special Justice, sitting for STEPHENS, C.J.