**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN M. RIVERS, JR.,

        *Plaintiff-Appellant,*

v.

WACHOVIA CORPORATION; WELLS
FARGO & COMPANY; G. KENNEDY
THOMPSON; DONALD K. TRUSLOW;
THOMAS J. WURTZ; ROBERT K.
STEEL; DOES 1 THROUGH 25,

        *Defendants-Appellees.*

No. 10-2222

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, Senior District Judge.
(2:09-cv-02941-PMD)

Argued: October 26, 2011

Decided: December 22, 2011

Before WILKINSON, MOTZ, and DUNCAN,
Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Motz and Judge Duncan joined.

---

**COUNSEL**

**ARGUED:** Ian Wesley Freeman, George Trenholm Walker, PRATT-THOMAS WALKER, PA, Charleston, South Carolina, for Appellant. Robert Walker Fuller, III, ROBINSON, BRADSHAW & HINSON, PA, Charlotte, North Carolina, for Appellees. **ON BRIEF:** Daniel S. McQueeney, Jr., PRATT-THOMAS WALKER, PA, Charleston, South Carolina, for Appellant. Louis Adams Bledsoe, III, Stephen Montgomery Cox, Adam Karl Doerr, ROBINSON, BRADSHAW & HINSON, PA, Charlotte, North Carolina, for Appellees.

---

**OPINION**

WILKINSON, Circuit Judge:

A former shareholder in Wachovia Corporation, appellant John M. Rivers, Jr. seeks to recover personally for the precipitous decline in value of his approximately 100,000 shares of Wachovia stock during the recent financial crisis. The district court, however, dismissed Rivers's suit against Wachovia and four of its senior executives. The court concluded that Rivers's complaint stated a claim derivative of injury to the corporation and that he was therefore barred from bringing a direct or individual cause of action against the defendants. Because Rivers's varied attempts to recast his derivative claim as individual are unavailing, we shall affirm the judgment.

I.

On October 1, 2009, John M. Rivers, Jr. filed suit in South Carolina state court against Wachovia Corporation (since acquired by Wells Fargo & Company) and four of its former officers, G. Kennedy Thompson, Robert K. Steel, Thomas J. Wurtz, and Donald K. Truslow. Rivers's complaint fills

almost 100 pages and lists seven causes of action: fraud, negligent misrepresentation, breach of fiduciary duty, constructive fraud, breach of duties as corporate officers, gross negligence, and violation of the South Carolina Securities Act of 2005.

The crux of the complaint, however, alleges that the defendants misrepresented the financial health of Wachovia and that, as a result, Rivers retained over 100,000 Wachovia shares until they lost nearly all value in the market downturn of 2008. According to the complaint: "Faced with the challenging housing market, and resulting strain on the mortgage system [the defendants] set about on a course of conduct to falsely represent the financial position and performance of Defendant Wachovia . . . to discourage the Plaintiff from selling his Wachovia stock."

Rivers claims that the defendants concealed problems growing out of Wachovia's 2006 acquisition of Golden West Financial Corporation, a California-based lender specializing in adjustable-rate mortgages that enabled borrowers to make minimum payments lower than the accrued interest on the loan. As the housing market declined, Rivers alleges that defendants understated Wachovia's credit losses, misrepresented the riskiness of Wachovia's assets, and overstated the strength of Wachovia's balance sheet in press releases, SEC filings, shareholder conference calls, and other materials disseminated to shareholders. Despite the defendants' continued assurances, in late 2007 Wachovia's true financial condition began to emerge on the heels of the subprime mortgage crisis. By the end of September 2008 the price of Wachovia's common stock had dropped dramatically to below $1 per share from $13.70 earlier that month and $56.65 in early 2007.

Under such circumstances if the corporation fails or refuses to assert a claim of injury on its own behalf, the "proper remedy . . . is a 'derivative action,' which is an action brought by a shareholder in the name or right of a corporation to redress

an injury sustained by, or to enforce a duty owed to, the corporation." 13 *Fletcher Cyclopedia of the Law of Corporations* §§ 5939-5940 (rev. ed. 2011). Rivers, however, declined to pursue a derivative action, under which any recovery would inure to the benefit of the corporation. Instead, he sought a personal recovery for the decline in Wachovia's share price on the theory that he had intended to sell his Wachovia stock before the collapse of the market but was induced not to by the defendants' misrepresentations of Wachovia's financial stability and health.

The defendants removed the action to federal court on diversity grounds and moved to dismiss Rivers's complaint on the basis that "neither North Carolina law nor South Carolina law permits direct shareholder claims for losses resulting solely from a fall in the value of stock." The district court granted the motion to dismiss all counts of the complaint, finding that the complaint "boils down to the claim that Defendants[ ] participated in a fraudulent scheme designed to deceive Plaintiff and the investing public as to the financial stability of Wachovia" and that "Plaintiff's claims . . . are derivative claims that must be dismissed." Rivers appeals, and for purposes of this review we take the factual contentions in his complaint as true. *See Braun v. Maynard*, 652 F.3d 557, 559 (4th Cir. 2011).

II.

A.

Rivers's attempt to recover individually for the decline in Wachovia's share price contravenes firmly settled corporate law governing derivative claims. Under both North Carolina and South Carolina law, "[t]he well-established general rule is that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger v. McCoy Hillard & Parks*, 488 S.E.2d

215, 219 (N.C. 1997); *see also Babb v. Rothrock*, 401 S.E.2d 418, 419 (S.C. 1991) ("It is firmly established by our decisions that individual shareholders may not sue corporate directors or officers directly for losses suffered by the corporation.").* Instead, shareholders may pursue such claims as a derivative suit on behalf of the corporation. The Supreme Court has described such shareholder derivative suits as a remedy "for those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has." *Meyer v. Fleming*, 327 U.S. 161, 167 (1946).

Prohibiting individual suits to recover for injuries that result in the decline in value of a corporation's stock is understandable, for "the gravamen of [the] complaint is an injury to the corporation and not to the individual interest of the shareholder." *Hite v. Thomas & Howard Co. of Florence*, 409 S.E.2d 340, 342 (S.C. 1991); *see Fletcher Cyclopedia* § 5913. An individual action "would not protect the interests of all stockholders" who suffer a common injury from the decline in value of the corporation's stock. *Brown v. Stewart*, 557 S.E.2d 676, 685 (S.C. Ct. App. 2001). Rather, the recovery of one shareholder in an individual suit would invariably be at the expense of other shareholders who suffered an identical harm.

By contrast, any recovery in a derivative suit redounds to the benefit of the corporation. Because any recovered dam-

---

*Rivers alleges that the district court erred in applying North Carolina law, rather than South Carolina law, in dismissing his claim. This allegation misstates the analysis of the district court, which did not resolve the choice of law question, but rather held that the suit warranted dismissal under either North Carolina or South Carolina law. As the district court stated, "under both North Carolina and South Carolina law, it is a 'well-established general rule' that shareholders do not have standing to bring direct claims for wrongs that diminish the value of their shares in a corporation." We agree and therefore need not resolve the choice of law question.

ages "constitute assets which belong to the corporation," "any action therefor must be brought in the right of the corporation, for the benefit of all persons entitled to participate in the distribution of its assets." *Gary v. Matthews*, 145 S.E. 702, 703 (S.C. 1928). The procedural requirements for derivative suits further protect the corporation and its stockholders by preventing a "multiplicity of lawsuits," by limiting "who should properly speak for the corporation" and by precluding "self-selected advocate[s] pursuing individual gain rather than the interests of the corporation or the shareholders as a group, [from] bringing costly and potentially meritless strike suits." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 253 (N.C. Ct. App. 2000) (quoting F.H. O'Neal & R. Thompson, *O'Neal's Oppression of Minority Shareholders* § 7:07 (2d ed. 2000)) (internal quotation marks omitted). A derivative lawsuit is thus the vehicle for a shareholder to litigate injuries that result in the diminution in value of the corporation's stock.

## B.

Given these principles, Rivers would appear to have no leg to stand on. The heart of his complaint is that he did not sell his shares in Wachovia before their decline in value due to his reliance on the defendants' alleged misrepresentations and misstatements in Wachovia's public statements from January 2007 to September 2008, including SEC filings, press releases, and earnings calls. He claims that due to the defendants' "concerted actions to conceal the truth and issue reassuring misrepresentations to financial markets and Plaintiff," he "has been damaged and caused to lose millions of dollars in the value of stock he held in Wachovia which he otherwise would have sold."

The problem, of course, is that these allegations describe a classic injury inflicted on the corporation and identify losses common to all Wachovia shareholders during the credit crisis. *See Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692

(7th Cir. 1990) ("[T]he nub of the problem is that the investors' injury flows not from what happened to them . . . but from what happened to [the company]."). As the district court observed, the "deterioration in Wachovia's stock price was felt by all shareholders, and it reflected the injuries the corporation itself was suffering"; yet, under an individual action, "any recovery would come from the pockets of the fellow shareholders."

Rivers's individual suit thus runs directly afoul of the principle that "a shareholder of a corporation may not recover individually for injury to the corporation that results in diminution of the value of the corporation's stock." *Allen ex. rel. Allen & Brock Constr. Co v. Ferrera*, 540 S.E.2d 761, 766 (N.C. Ct. App. 2000). Because Rivers's claim is derivative of the injury suffered by Wachovia, his individual cause of action was properly dismissed.

## III.

Rivers insists, however, that his suit falls within two well-recognized exceptions to the general rule against individual suits for injuries to the corporation. A "shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong," under two circumstances: "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." *Barger*, 488 S.E.2d at 219 (quoting 12B *Fletcher Cyclopedia* § 5911 (perm. ed. 1993)). It is clear, however, that neither the special duty nor the special injury exception applies to Rivers's claim.

## A.

In *Barger*, the Supreme Court of North Carolina explained the special duty exception:

> The special duty may arise from contract or other-
> wise. To support the right to an individual lawsuit,
> the duty must be one that the alleged wrongdoer
> owed directly to the shareholder as an individual.
> The existence of a special duty thus would be estab-
> lished by facts showing that defendants owed a duty
> to plaintiffs that was personal to plaintiffs as share-
> holders and was separate and distinct from the duty
> defendants owed the corporation.

*Id.* at 220 (citations omitted). In his complaint, Rivers alleges that the individual defendants "owed a fiduciary duty to [Rivers] to disclose and communicate truthful and accurate information about the financial condition and performance" of Wachovia. But corporate directors and officers owe such a fiduciary duty to the corporation itself. Rivers seeks to transform the nature of that duty to one owed to him individually, but under North Carolina law the fiduciary duty runs to the corporate entity and any breach may only be asserted by a shareholder derivatively.

Under North Carolina law, officers and directors of a corporation owe a fiduciary duty to the corporation which does not create an individual cause of action. *See* N.C. Gen. Stat. § 55-8-30 ("A director shall discharge his duties as a director . . . in a manner he reasonably believes to be in the best interests of the corporation."); *Id.* § 55-8-42 (same with respect to a corporate officer). As the commentary to the statute emphasizes, the prior version of the law "provided that officers and directors stand in a fiduciary relation 'to the corporation and its shareholders,'" while the amended version omits mention of a fiduciary duty to shareholders. The amendment was intended "to avoid an interpretation that there is a duty running directly from directors to the shareholders that would give shareholders a direct right of action on claims that should be asserted derivatively." Commentary to N.C. Gen. Stat. § 55-8-30. Rivers therefore misplaces reliance on *Gilbert v. Bagley*, 492 F. Supp. 714 (M.D.N.C. 1980), for authority that

he may bring a direct claim for the defendants' alleged breach of their fiduciary duty. Among other reasons, *Gilbert* is inapplicable because it predated both the amendment to § 55-8-30 and the general rule against direct claims articulated in *Barger*.

South Carolina law is a bit different. It specifies that officers and directors of a corporation have a fiduciary duty to act in the best interest of the corporation and its shareholders. *See* S.C. Code Ann. § 33-8-300(a) ("A director shall discharge his duties as a director . . . in a manner he reasonably believes to be in the best interests of the corporation and its shareholders."); *Id.* § 33-8-420(a) (same with respect to a corporate officer). But under South Carolina case law, a breach of this fiduciary duty must be pursued through a derivative, and not an individual, action. *See, e.g.*, *Brown*, 557 S.E.2d at 684 ("The fiduciary obligation of . . . directors is ordinarily enforceable through a stockholder's derivative action.") (internal quotation marks omitted); *Clearwater Trust v. Bunting*, 626 S.E.2d 334, 339 (S.C. 2006) ("Appellants allege corporate malfeasance that resulted in identical harm to all shareholders: such a breach of fiduciary duty gives rise to a classic shareholders' derivative suit.").

Nonetheless, Rivers contends that several cases establish that the defendants owed him a special duty individually. These cases, however, discuss two categories of special duties that do not apply here. First, the cases recognize a special duty where the defendant's misrepresentations to the individual plaintiff predated the shareholder-officer relationship and induced the plaintiff to become a shareholder. *See, e.g.*, *Howell v. Fisher*, 272 S.E.2d 19, 26 (N.C. Ct. App. 1980) (observing that the "claim cannot be a derivative one, on behalf of the corporation, when the alleged negligence occurred before [plaintiffs] were even stockholders"); *Allen*, 540 S.E.2d at 766 (holding that alleged wrongful acts by defendants which induced plaintiff to become a shareholder provided a possible basis for individual recovery). By Rivers's own account, the

defendants' alleged misrepresentations did not induce him to become a Wachovia shareholder, but to refrain from selling stock he already owned.

Second, several cases extend special protection to minority shareholders in a closely held corporation. *See, e.g.*, *Norman*, 537 S.E.2d at 260 (holding that "majority shareholders in a close corporation owe a 'special duty' and obligation of good faith to minority shareholders"); *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967) (holding that officers and directors of a corporation owe a fiduciary duty to a minority stockholder to make a full disclosure of all relevant facts when purchasing shares from the stockholder). Rivers was not a minority shareholder in a closely held corporation but one among many who held Wachovia's publicly traded shares.

Absent any allegation that Rivers was party to a separate contract with the defendants which created distinct duties personal to him, or that he was individually subject to misleading inducements outside the officer-shareholder relationship, Rivers "fails to set forth any allegations which, even taken as true, support a special duty between [him] and defendants." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 525 S.E.2d 441, 444 (N.C. 2000). As in *Energy Investors*, Rivers was only one of many to receive or rely upon alleged misrepresentations. The misrepresentations allegedly contained in the filings and releases were available to all shareholders: a breach of duty to one was perforce a breach of duty to all.

### B.

Under the second, special injury exception to the general rule, the plaintiff must allege an injury "peculiar or personal" to him. *Barger*, 488 S.E.2d at 220. An injury may sustain an individual cause of action where "a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation." *Id.* (quoting *Howell*, 272 S.E.2d at 23); *see Stewart v. Ficken*,

149 S.E. 164 (S.C. 1929). A common example of a distinct injury is a "claim of stock dilution and a corresponding reduction in a shareholder's voting power." *Fletcher Cyclopedia* § 5913. This "alleged reduction in [plaintiff's] individual percentage of corporate control is separate and distinct from any general diminution in the value of corporate stock." *Hite*, 409 S.E.2d at 342.

Like the special duty exception, the special injury exception is inapplicable to Rivers's complaint. It is clear, as we have noted, that the decline in the corporation's share value did not inflict any special or distinct injury on Rivers, but rather injured the corporation. As such, it does not provide Rivers with an individual cause of action. *See Barger*, 488 S.E.2d at 220. Rivers attempts, however, to differentiate between mismanagement which injured the corporation and misrepresentations which injured him individually. But this is a distinction without a difference. When the price of Wachovia's common stock dropped from $56.65 per share in January 2007 to below $1 per share in September 2008, the corporation was injured and monetary loss was common to every Wachovia shareholder.

Equally unavailing is Rivers's "lost profit opportunity" theory of harm. Under this theory, Rivers meant to sell his shares in Wachovia before the decline in share price but forwent the opportunity to sell based on the false statements of defendants. This theory suffers multiple flaws. Most basically, the alleged injury of a "lost profit opportunity" is merely an opaque way of restating that Rivers was harmed by the decline in value of Wachovia stock. As the Fifth Circuit stated in *Crocker v. FDIC*, 826 F.2d 347, 350 (5th Cir. 1987), the "lost profit opportunity" theory of harm is indistinguishable "from the classic model of diminution in the value of corporate stock," as the "end result" is the same, with the stock of all shareholders losing value. *See also Arent v. Distribution Scis., Inc.*, 975 F.2d 1370, 1373 (8th Cir. 1992). Rivers's claim that he should recover for the lost opportunity to sell his

stock at a better price depends, as the district court noted, on the allegation that "he suffered losses when Wachovia stock declined along with the U.S. housing market during the credit crisis." This effort to disguise a classic derivative claim for the decline in stock value as a "lost profit opportunity" is thus too clever by half.

Moreover, courts have recognized that permitting direct claims for a "lost profit opportunity" presents substantial problems of proof too speculative to litigate on an individual basis. *See, e.g.*, *Crocker*, 826 F.2d at 351. "Unlike a typical securities claim involving a precise date, number of shares, price, and profit or loss," such claims "involve only a hypothetical transaction." *Harris v. Wachovia Corp.*, 2011 NCBC 3 ¶ 79 (N.C. Super. Ct., Feb. 23, 2011). As a result, the theory of liability for these claims depends crucially on the element of shareholder intent, specifically whether the shareholder would have sold his shares but for the defendants' alleged fraud. Such assertions of intent, however, would often require courts to extract recollections from the recesses of a particular investor's mind or, as the Supreme Court has put it, require the resolution of "many rather hazy issues of historical fact the proof of which depended almost entirely on oral testimony." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 743 (1975). The ascertainment of damages would prove as difficult as the question of liability. Not only would we have to take our best guess at when Rivers would have sold his stock based on information that he did not receive, but "analysis would be required with regard to what would the stock price set by the market have been at the time of Plaintiffs' proposed sale if accurate information had been published." *Harris*, 2011 NCBC 3 ¶ 79.

Equally problematic, the theory of "lost profit opportunity" articulates an incoherent theory of harm, as "the deceit is not coupled with the injury." *Kagan*, 907 F.2d at 692. Rivers claims he was injured by the misrepresentations of the defendants. But the defendants' alleged misrepresentations caused

the artificial inflation of the share price and not the depression in value for which Rivers seeks to recover. In *Arent*, the Eighth Circuit observed that the plaintiffs' claim "fails as a matter of law because any injury to plaintiffs was not caused by [the corporation's misrepresentations]. Plaintiffs were not harmed because they were unable to realize the true value of their stock—they were harmed because the true value of their stock was zero." *Arent*, 975 F.2d at 1374.

Likewise, Rivers accuses the defendants of concealing Wachovia's true financial condition. Ironically, therefore, the opportunity for profit which Rivers claims he lost existed only due to the alleged misrepresentations that artificially inflated Wachovia's share price. The opportunity for profit was thus not a casualty of the alleged misrepresentation, but a creation of it. As in *Arent*, "if everyone had known this adverse fact [that Rivers alleges defendants concealed], then the stock's value would have reflected the adversity." *Id.* at 1374; *see also Crocker*, 826 F.2d at 351 (same). After all, the drop in Wachovia's share price and concomitant collapse of the market resulted from the disclosure of material financial information, not its concealment.

In sum, Rivers's claim of a "lost profit opportunity" rests on a "troublesome paradox": "on the one hand, [plaintiffs] claim the defendants' scheme caused their injury; yet on the other hand, without the scheme, the [plaintiffs] could never have realized the artificially high profit that they claim to have unjustly lost." *Id.* at 352. The failure to sufficiently capitalize on the effects of an alleged fraudulent scheme is not an injury we are prepared to credit.

IV.

In the end, Rivers has failed to articulate principled limits on the claims he seeks to press. Limiting individual suits to those who intended to sell is no limit at all; virtually every shareholder considers selling his shares at various points in

time and every investor who suffers substantial monetary losses will be tempted to recall a prior intent to sell. Rivers claims his injury is unique but the number of people who may step forward with a similar tale of inducement not to sell is nigh infinite. Decisions to buy, sell, or hold shares inevitably involve a degree of risk and uncertainty. It is all too common to look back and wish one had invested differently. Investment presupposes risk—it is not the role of courts to reverse the consequences of infelicitous decisions after the fact or to allow one investor to recover losses at the expense of fellow shareholders. To the extent a shareholder wishes to litigate this sort of monetary loss due to the misrepresentations of corporate executives, his remedy lies within the framework of the derivative suit on behalf of the corporation. Because Rivers pursued a very different route, his suit was properly dismissed, and the judgment is affirmed.

*AFFIRMED*