# IN THE SUPREME COURT OF THE STATE OF NEVADA

KENNETH A. BRUNK; RICHARD D. MORITZ; BRADLEY J. BLACKETOR; TIMOTHY HADDON; MARTIN M. HALE, JR.; TREY ANDERSON; RICHARD SAWCHAK; FRANK YU; JOHN W. SHERIDAN; ROGER A. NEWELL; RODNEY D. KNUTSON; AND NATHANIEL KLEIN,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE NANCY L. ALLF, DISTRICT JUDGE,
Respondents,
and
DANIEL E. WOLFUS,
Real Party in Interest.

No. 76052

FILED

OCT 11 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER GRANTING PETITION FOR WRIT OF PROHIBITION

This is an original petition for a writ of prohibition or mandamus challenging a district court denial of a motion to dismiss a corporations action.

Petitioners Kenneth Brunk, et al., (Directors) are former directors and officers of Midway Gold Corporation (Midway), a publicly traded Canadian company incorporated in British Columbia with principal offices in Colorado. Midway engaged in gold mining and mineral exploration operations in Nevada and elsewhere, and commissioned a feasibility study for a gold mine project to be located in White Pine County (the Pan project). Real party in interest Daniel Wolfus served as Midway's

19-42206

Chairman and CEO at the time Midway commissioned the study. After his replacement as Midway's Chairman and CEO, Wolfus exercised various stock options to purchase shares of Midway stock, allegedly relying on favorable public statements and press releases concerning the Pan project. The Pan project was unsuccessful, however, and Midway ultimately went bankrupt. Thereafter, Wolfus filed suit in Nevada against the Directors, asserting claims based on California law. Wolfus alleged the Directors mismanaged the company, and the Pan project in particular, and despite knowing the Pan project was not going to succeed, breached a fiduciary duty of disclosure by issuing misleading press releases and public statements promoting the project's success. He alleged that he relied on these misleading statements in exercising his stock options, which were subsequently rendered worthless by Midway's bankruptcy.

The Directors moved to dismiss Wolfus's complaint, based in part on a lack of subject matter jurisdiction. The Directors argued that because Midway was incorporated in British Columbia, Wolfus's claims are subject to the law of that jurisdiction, including various pre-suit requirements for shareholder derivative suits which Wolfus failed to satisfy. After initially agreeing with the Directors and dismissing Wolfus's complaint for lack of subject matter jurisdiction, the district court permitted Wolfus to amend his complaint. Wolfus's second amended complaint included new citations to California and Delaware caselaw in support of his fiduciary duty and common law fraud claims, authorities he did not include in his original complaint or first amended complaint. The Directors moved once more to dismiss Wolfus's complaint, whereupon the district court reversed course, denying the Directors' motion to dismiss for lack of subject matter jurisdiction and ordering discovery on the issue of personal

Supreme Court
of
Nevada

(O) 1947A

2

jurisdiction as to certain of the Directors. The Directors now challenge the district court's denial of their motion to dismiss.

Having considered the petition, the record, and the points raised during oral argument, we conclude Wolfus's claims are derivative in nature, as they are necessarily dependent on injury directly inflicted upon Midway, injury from which harm indirectly affected Wolfus and other shareholders. Because Wolfus lacked standing to assert a derivative action on behalf of a bankrupt corporation incorporated under British Columbia law, we grant the Directors' writ petition and conclude the district court erred in exercising subject matter jurisdiction over Wolfus's complaint.

## DISCUSSION

A writ of prohibition is an extraordinary remedy, and "[t]he decision to entertain a petition for [writ relief] lies within this court's discretion." *Gen. Motors Corp. v. Eighth Judicial Dist. Court*, 122 Nev. 466, 469, 134 P.3d 111, 113-14 (2006). We exercise our discretion to entertain a writ petition only where there is "no plain, speedy and adequate remedy in the ordinary course of law or there are . . . important legal issues that need clarification." *Id.* at 469, 134 P.3d at 114 (internal quotation marks omitted). Choice-of-law questions, such as the one presented here, may justify writ relief, particularly where the question implicates "an important issue of law recognizing the distinction between direct and derivative corporate shareholder claims." *Parametric Sound Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 417, 421, 401 P.3d 1100, 1104 (2017); *Gen. Motors Corp.*, 122 Nev. at 469, 134 P.3d at 114. Because the instant petition raises important questions of law pertaining to choice-of-law issues and the distinction between direct and derivative shareholder claims, we exercise our discretion to entertain the writ petition.

*The distinction between derivative and direct shareholder claims*

The critical distinction between derivative and direct shareholder claims is dispositive here. If Wolfus's claims against the Directors are derivative in nature, they trigger the internal affairs doctrine and are controlled by the law of British Columbia, which requires a shareholder to obtain leave of court and make a demand on the board of directors before filing a derivative action. *See Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998) ("Under the 'internal affairs' doctrine, the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated."); *see also Rogers v. Bank of Montreal*, 1985 CarswellBC 176, para. 62 (Can. B.C.S.C.) (WL) ("[L]eave of court [is] a prerequisite to the commencement, conduct, discontinuance, settlement, or dismissal of any derivative action even if the shareholder meets the common law's stringent conditions.").

Additionally, if Wolfus's claims are derivative, he lacks standing as a result of Midway's bankruptcy, which rendered any such claims a part of the corporation's bankruptcy estate, over which the estate's trustee has exclusive standing to litigate. 11 U.S.C. §§ 323, 541; *Estate of Spirtos v. One San Bernardino Cty. Superior Court Case No. SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("The bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate."); *Delgado Oil Co. v. Torres*, 785 F.2d 857, 860 (10th Cir. 1986) (explaining that the bankruptcy estate of a corporate debtor includes any derivative right of action the corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director).

If, on the other hand, Wolfus has properly asserted a direct claim, that is, a claim personal to him, then he alleges an individual cause

of action on his own behalf for which he would have standing to sue. *Parametric Sound*, 133 Nev. at 423, 401 P.3d at 1105 (2017) ("[S]hareholders have standing to bring suit for direct injuries they have suffered and that are separate from any injury the corporation may have suffered without making a demand on the board of directors.").

Wolfus, unsurprisingly, argues his claims are direct, rather than derivative, in that they are personal to him as a shareholder and arise from a breach of duty Midway's Directors owed to him personally, rather than a duty owed to the corporation. As discussed herein, we conclude the gravamen of Wolfus's claims allege mismanagement by the Directors, causing Midway's ultimate demise, stemming from the failed Pan project, which incidentally harmed Wolfus and other shareholders in the form of diminution in the value of their corporate shares. Wolfus has thus failed to allege an injury that is independent of the harm Midway suffered as a corporation allegedly mismanaged by the Directors. As such, Wolfus's claims are derivative in nature.

*Controlling standard for distinguishing direct and derivative claims*

"The question whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law of the state of incorporation . . . ." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589-90 (7th Cir. 2003); *see also Kepley v. Lanz*, 715 F.3d 969, 972-73 (6th Cir. 2013). The test British Columbian courts apply when evaluating whether a claim is direct or derivative is whether "the gravamen of the cause of action alleged [arises] as a result of wrongs done to the company . . . . If the damage that flows is a direct result of the wrongs done to the company, then those damages can only be claimed by the company." *Robak Indus. Ltd. v. Gardner*, 2006 CarswellBC 2533, para. 5 (Can. B.C.S.C.) (WL). In making this determination, the courts in that jurisdiction examine "the nature of

SUPREME COURT
OF
NEVADA

(O) 1947A

5

the damages suffered as alleged in the pleadings." *Id.* at para. 13; *see also Luft v. Ball*, 2013 CarswellBC 820, para. 34 (Can. B.C.S.C.) (WL) ("In order for a complaining shareholder to maintain a personal action for breach of duties owed to the company, that shareholder must show that he or she has suffered damage or loss in a manner distinct from other shareholders.").

The test in British Columbia closely resembles that which California courts have adopted, as articulated in *Jones v. H.F. Ahmanson & Co.*: "[T]he action is derivative . . . if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders . . .". 460 P.2d 464, 470 (Cal. 1969) (internal quotation marks omitted). British Columbia's approach is also similar to the approach the Supreme Court of Delaware follows: "[T]o bring a direct action, the stockholder must allege something other than an injury resulting from a wrong to the corporation." *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031, 1038 (Del. 2004). "[A] court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation." *Id.* at 1039. We have adopted Delaware's approach for determining whether a claim is direct or derivative. *Parametric Sound Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 417, 427, 401 P.3d 1100, 1108 (2017).

The tests controlling the direct/derivative distinction in California, British Columbia, and Nevada are essentially the same, and require us to evaluate the nature of the injury Wolfus alleges in his second amended complaint. We apply this analysis to the entirety of Wolfus's complaint, dealing first with the nature of his fiduciary duty claims.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Wolfus's claims for breach of fiduciary duty*

Wolfus alleges the Directors breached a duty of disclosure by failing to communicate material information about Midway and the Pan project in public filings and press releases. In particular, he alleges that the Directors' non-disclosure of facts pertaining to Midway's mismanagement constituted a breach of fiduciary duty to disclose, and that the duty was owed to him personally. Any duty to disclose the alleged mismanagement, however, stems from duties which the Directors owed to Midway, not to Wolfus. As the Supreme Court of Delaware has explained: "The duty of directors to observe proper disclosure requirements derives from the combination of the fiduciary duties of care, loyalty, and good faith." *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998). Thus, Wolfus's allegation of a breach of a duty to disclose does not automatically implicate an individual cause of action. Rather, "[the] violation may result in a derivative claim on behalf of the corporation or a cause of action for damages," depending on the "classic 'direct v. derivative'" analysis. *Id.* at 14 & n.45.

We recently adopted Delaware's "direct harm" test for distinguishing between derivative and direct shareholder claims in *Parametric Sound*, 133 Nev. at 427, 401 P.3d at 1108. In order to determine whether a shareholder claim is direct or derivative, the court must consider: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id.* (quoting *Tooley*, 845 A.2d at 1033). The purpose of *Tooley*'s two-part "direct harm" test is to serve as a means for "determining whether stockholders can bring a claim for breach of fiduciary duty directly, or whether a particular fiduciary duty claim must be brought derivatively

on the corporation's behalf." *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1139 (Del. 2016).

Pursuant to the direct harm test, the relevant inquiry in addressing who suffered the alleged harm is: "Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?" *Parametric Sound*, 133 Nev. at 426, 401 P.3d at 1107-08 (quoting *Tooley*, 845 A.2d at 1036). Applying the direct harm test as set forth in *Parametric Sound*, we conclude Wolfus's fiduciary duty claims are derivative because he has not demonstrated a harm that is independent of the injury to Midway as a corporation.

Reviewing the entirety of Wolfus's complaint, it is clear the nature of Wolfus's claims are wholly dependent on alleged injuries primarily inflicted upon Midway, which resulted indirectly in harm to Wolfus and to other Midway stockholders in the form of a diminution in stock value. The gravamen of his complaint is the Directors' mismanagement of Midway, specifically, mismanagement in the form of failing to secure sufficient capital for the Pan project, deciding not to sell assets to create necessary capital, and allowing a Director (Martin Hale) to "tak[e] effective control of Midway and the Pan project even though Hale *lacked the ability to manage the Pan project*." (Emphasis added.) Wolfus also alleges the Directors failed to appropriately employ supervisory staff for the Pan project, which delayed production. Further, Wolfus alleges the Pan project failed because the Directors, rather than cut costs to purchase necessary equipment, "decided not to purchase this necessary equipment" and instead purchased equipment for which the company had not secured the appropriate permits. These alleged acts of mismanagement and

imprudent investment decisions impaired or prevented what Wolfus describes in his complaint as the "two major events" required for the Pan project to succeed: Midway securing necessary permits and securing necessary financing for the project.

Wolfus's breach of fiduciary duty claims depend on alleged misrepresentations involving the purported mismanagement of the company by the Directors, mismanagement which caused the failure of the Pan project and presumably the failure and bankruptcy of the company. He contends the Directors breached a fiduciary duty to disclose material information about their mismanagement of the company by omitting the information from public filings and public press releases in order to encourage investors to retain and purchase Midway's stock. Thus, Wolfus's allegations explicitly set forth, first and foremost, a direct harm to the company caused by the Director's purported mismanagement, and implicate primarily a breach of duty the Directors owed to the corporation.

We are persuaded, based on the body of his complaint and the nature of his claims, that Wolfus's breach of fiduciary duty claims describe a derivative action based on the Directors' alleged mismanagement of Midway. His complaint merely reflects an unavailing attempt to characterize the derivative claim as a direct claim personal to him. Such an effort does not alter the nature of his claims. *See Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 352-53 (Del. 1988) (holding that where the gravamen of a stockholder's complaint is director mismanagement, the cause of action is derivative in nature). Notwithstanding his attempt to characterize his claims as direct, the essence of Wolfus's claims allege direct harm to Midway from which injury resulted indirectly to Midway's shareholders. Wolfus cannot sidestep the gravamen of his allegations,

SUPREME COURT
OF
NEVADA

(O) 1947A

9

which is harm to Midway, simply by framing his fiduciary duty claims in terms of misrepresentation about the alleged mismanagement. Accordingly, in this instance, Wolfus's fiduciary duty claims are derivative. *See In re Sunrise Sec. Litig.*, 916 F.2d 874, 882-83 (3rd Cir. 1990) (concluding shareholders' purported direct claim was derivative where they alleged corporate "advertisements, press releases, periodic reports and other publicly disseminated materials," were misleading as to the company's financial condition and omitted information about the company's mismanagement, because the shareholders' "asserted injury emanated from mismanagement, not fraud" (internal quotation marks omitted)); *see also Rivers v. Wachovia Corp.*, 665 F.3d 610, 614-18 (4th Cir. 2011) (concluding a shareholder asserted a derivative claim after alleging that directors misrepresented the company's financial health, causing the shareholder to retain company stock until they lost nearly all value, and that the attempt to "differentiate between mismanagement which injured the corporation and misrepresentations which injured [the shareholder] individually . . . is a distinction without a difference").

Wolfus invokes *Citigroup Inc. v. AHW Investment Partnership*, 140 A.3d 1125, 1126-27 (Del. 2016) to assert that his claims are direct claims because they belong to him personally. For several reasons, however, *Citigroup* is distinguishable from the instant case and does not support Wolfus's argument that his claims against the Directors are direct and personal to him. First, the shareholders in *Citigroup* were not pursuing claims for breach of fiduciary duty, as Wolfus is here, and the court in *Citigroup* did not apply the direct harm test as set forth in *Tooley* and adopted by this court in *Parametric Sound*. *See Citigroup*, 140 A.3d at 1126-27, 1134 ("Because the holder claims at issue here belong to the holding

 

stockholders under the state laws that govern the claims, *and are not fiduciary duty claims* or claims otherwise belonging to the corporation, *Tooley* does not affect our answer to this certified question.")). Wolfus's explicit allegations of claims for breach of fiduciary distinguish his claims from those which the *Citigroup* court considered.

Second, the *Citigroup* court explicitly noted that if the shareholders there had asserted the type of claims Wolfus asserts here—claims arising from a failure to make timely and accurate public disclosures—the *Citigroup* shareholders' cause of action would implicate the internal affairs doctrine and would be subject to the laws of the state in which the company (Citigroup) was incorporated. *Id.* at 1134-36. The court articulated several concerns related to this point, explaining that:

> When a public corporation . . . has shares in the market, it will have investors . . . in virtually every state in our nation. For investors to be able to sue not only under federal law, but purport to sue under their own state's bespoke laws, subjects corporations to potential inconsistencies, inefficiencies, and unfairness.

*Id.* at 1136. We identify the same concerns with Wolfus's attempt to subject Midway, a British Columbian corporation headquartered in Colorado, to claims brought under California law in a Nevada court.

Finally, *Citigroup* is unavailing for Wolfus because, unlike the parties in *Citigroup*, the parties here disagree as to the law that should govern Wolfus's claims. The *Citigroup* court was asked to interpret New York and Florida state law in response to a certified question from the United States Court of Appeals for the Second Circuit, and the parties agreed the law of either New York or Florida controlled the claims at issue. *Id.* at 1132-34. The *Citigroup* court explained that because both New York and Florida would recognize so-called "holder" claims as belonging to the

individual shareholder, and because the parties agreed that either Florida or New York law applied, the court's answer was based on the law of those states:

> For the purpose of answering this certified question what matters is that the [shareholders'] [h]older [c]laims are governed by either New York or Florida law—a fact about which the parties, and as important, our referring courts, agree— and . . . courts in those states have suggested that their highest courts would recognize holder claims and would conclude, consistent with their very name, that . . . they belong to the holder . . . .

*Id.* at 1137 (footnotes omitted).

While *Citigroup* does not assist Wolfus in his effort to color his derivative claims as direct claims, our conclusion here does align with the *Citigroup* court's rationale insofar as Wolfus asserts breach-of-fiduciary duty claims involving the Directors' alleged failure to make timely and accurate public disclosures. To the extent the *Citigroup* court concluded that such claims implicate the internal affairs doctrine and are subject to the law of the state of incorporation, *id.* at 1134-35, we agree and conclude Wolfus's claims are subject to British Columbia law.

We are also guided by the *Citigroup* court's explanation that non-fiduciary duty claims are not subject to the *Tooley* "direct harm" test which we adopted in *Parametric Sound*. Determining whether non-fiduciary duty claims are direct or derivative requires, as discussed in *Citigroup, id.* at 1138-40, an analysis of the nature of the harm the shareholder alleges. Having applied the direct harm test to Wolfus's fiduciary duty claims, we next analyze the nature of Wolfus's common law claims for fraud and negligent misrepresentation, and conclude that they, too, are derivative in nature.

*Wolfus's claims for fraud and negligent misrepresentation*

Wolfus argues that California common law, as set forth in *Small v. Fritz Cos.*, 65 P.3d 1255 (Cal. 2003), permits him to assert claims for fraud and negligent misrepresentation directly. Regardless of how Wolfus purports to characterize these claims, however, he has simply repackaged his fiduciary duty claims under different labels. "[T]he duty of the court," however, "is to look at the nature of the wrong alleged, not merely at the form of the words used in the complaint." *Schuster v. Gardner*, 25 Cal. Rptr.3d 468, 476 (Ct. App. 2005) (quoting *In re Syncor Int'l Corp. Shareholders Litig.*, 857 A.2d 994, 997 (Del. Ch. 2004)); *see also Arent v. Distribution Scis., Inc.*, 975 F.2d 1370, 1373 (8th Cir. 1992) ("[T]he fact that plaintiffs framed the harm as a direct fraud [does] not permit them to go forward on a claim that [i]s, at its core, derivative."). Here, Wolfus attempts to frame his cause of action as one for fraud and negligent misrepresentation, but the claims are based on what the Directors purportedly should have disclosed about their mismanagement of Midway. The underlying nature of Wolfus's fraud and negligent misrepresentation claims are derivative insofar as they are dependent on alleged injuries to Midway.

To be sure, Wolfus attempts to circumvent the fact that his claims arise from corporate mismanagement by carefully alleging that the Directors owed a duty directly to him, and breached that duty when, in their capacity as Directors, they failed to make true and complete public statements regarding the Pan project. Wolfus's second amended complaint explicitly states he does not assert any claim belonging to Midway and does not assert any claim for mismanagement of Midway, while alleging the Directors are liable for withholding facts they knew would be material to any reasonable investor in Midway, including Wolfus, and knew that none

SUPREME COURT
OF
NEVADA

(O) 1947A

13

of those facts had been disclosed. But generally alleging that a duty is owed individually to a shareholder, without more, is unavailing. *See Parametric Sound*, 133 Nev. at 422 n.10, 401 P.3d at 1105 n.10 ("Without more, general language concerning fiduciary duty owed to shareholders by directors does not support a direct action." (internal quotation marks omitted)).

No matter how he characterizes them, the nature of Wolfus's fraud and misrepresentation claims, as the *Citigroup* court explained, are claims for breach of fiduciary duty that would be governed by the law of the state of incorporation:

> [A]ny argument . . . that an issuer of stock owes special duties to the holder of its stock is just another way of arguing that the investors of a corporation are owed fiduciary duties by those who manage it. In other words, it is a way of saying that because of the relationship between the governed and the governors of a corporation, a special cause of action ought to exist. That kind of claim is governed by the laws of the state of incorporation exclusively under the internal affairs doctrine.

*Citigroup*, 140 A.3d at 1134-35. Like his fiduciary duty claims, the basis of Wolfus's fraud claim is that Midway's Directors mismanaged the Pan project, failed to disclose various aspects of their mismanagement, and as a result of the non-disclosure, Wolfus exercised stock options he otherwise would not have. Wolfus's fraud claim is slightly distinct from his fiduciary duty claims to the extent it emphasizes that his cause of action stems from the diminution in Midway's share value. His second amended complaint alleges that, had he known of the purportedly undisclosed facts the Directors withheld, Wolfus "would have sold all of his Midway shares . . . in February 2014 *when Midway's stock price began to fall* from its peak." (Emphasis added.) The nature of the harm alleged here cannot be understood apart from the decline in Midway's stock value which ostensibly

SUPREME COURT
OF
NEVADA

(O) 1947A

resulted from the Directors' mismanagement. The decline in Midway's stock value did not result from any misrepresentation or omission, but from the Directors' alleged failure to successfully manage the Pan project. Generally, such an allegation will sustain a derivative action, not an action for direct injury to the shareholder. "The reasoning behind this rule is said to be that a diminution in the value of corporate stock resulting from some depreciation or injury to corporate assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder." 12B *Fletcher Cyclopedia of the Law of Corporations* § 5913 (Sept. 2018 Update). In other words, a shareholder's allegation of harm in the form of diminished value in stock is derivative when it results from alleged injury to the corporation, as Wolfus has alleged here. The overwhelming weight of authority clearly supports the proposition that shareholder suits alleging harm based on diminution in stock value are derivative when the decline results from harm directly inflicted on the corporation. *See, e.g., Rivers v. Wachovia Corp.*, 665 F.3d 610, 614-15 (4th Cir. 2011) ("The well-established general rule is that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." (internal quotation marks omitted); *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384-85 (5th Cir. 2005) (concluding a shareholder's claims for fraud and negligent misrepresentation were derivative because alleged corporate misrepresentations that "caus[e] a decline in the company's share price when the truth is revealed," injure the corporation directly and the shareholders only indirectly.); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (concluding a shareholder's allegations of breach of fiduciary duty and corporate mismanagement "describe[d] a direct

injury to the bank, not the individual stockholders," and allegations of "depreciation of stock value [were] an indirect result of the injury to [the bank] which resulted in its closure"); *NBD Bank, N.A. v. Fulner*, 109 F.3d 299, 301 (6th Cir. 1997) ("A shareholder's rights are merely derivative unless he can show a violation of a duty owed directly to him. Depreciation in value of a shareholder's corporate stock is generally not the type of direct personal injury necessary to sustain a direct cause of action.").

Even if we were to entertain Wolfus's argument that his claims for fraud and misrepresentation allege direct harm personal to him, his pleading would be inadequate pursuant to the very authority upon which he relies, specifically, the decision in *Small v. Fritz Cos.*, 65 P.3d 1255, 1265 (Cal. 2003). There, the California Supreme Court explained:

> "[I]n view of the danger of nonmeritorious suits . . . conclusory language does not satisfy the specificity requirement. In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place. The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations."

*Id.*

Wolfus's allegations regarding his reliance on the Directors' alleged misrepresentations are far from specific. He broadly asserts that he would have sold "all" of his Midway shares when they "peaked" in February 2014, while failing to explain how he could have known the stock price had reached a peak at that time. In effect, he has resorted to little more than

alleging the type of "unspoken and unrecorded thoughts and decisions" which the California Supreme Court rejected in *Small*. *Id.* For example, according to his second amended complaint, "Wolfus was primarily concerned with the status of the Pan project and the *likelihood* that this project would begin profitably mining gold and be revenue positive. *Wolfus determined* from those public statements and the absence of the 2013 [u]ndisclosed [f]acts that profitable mining operations would result in a *substantial increase in the value* of their combined Midway shares." (Emphasis added.) Wolfus's generic assertions that he subjectively "determined" through speculation based on public statements that Midway shares would "likely" be profitable, and that had he learned of the alleged omissions about the Directors' mismanagement, he would have sold all his Midway shares when the stock price "peaked" in February 2014, are merely conclusory and lack the level of specificity the California Supreme Court held is required under California law.[1] Thus, even if we were to apply California law to Wolfus's fraud and negligent misrepresentation claims, they would fail.

---

[1]Wolfus's generic and speculative allegations also stand in stark contrast to the shareholders' allegations in *Citigroup*, upon which Wolfus relies for support. The shareholders there apparently had developed a specific plan for selling their Citigroup shares at a specific price, at a specific time, in collaboration with their financial advisors, *before* the Citigroup stock price declined. *Citigroup*, 140 A.3d at 1128. They evidently supported their allegation by showing that they partly carried out their plan to sell their Citigroup shares, but delayed selling the remainder of their shares for twenty-two months in reliance on misrepresentations made to them about the corporation's financial health. *Id.* Wolfus, here, fails to identify anything remotely similar, beyond generic references to what he would have done with the benefit of hindsight.

In short, the gravamen of Wolfus's complaint is the Directors' mismanagement of Midway, and the Pan project in particular, which harmed the corporation and contributed to its demise. Wolfus attempts to isolate the injury to him at the point at which he exercised stock options, and essentially seeks to obtain a refund of the purchase price he paid for his Midway shares, as well as the market value of the shares he purportedly would have sold, had the Directors' alleged mismanagement been disclosed to him and to the public. To recognize such a claim as a direct claim would be to ignore the entirety of Wolfus's complaint in disregard of the primary harm inflicted directly on the now-bankrupt corporation, an injury from which harm to Wolfus and other Midway shareholders necessarily derived.

*Wolfus's claims are governed by the law of the state of incorporation*

Having determined that Wolfus's claims against the Directors are derivative in nature, as allegations of mismanagement which harmed Midway directly, we conclude the law of British Columbia, where Midway was incorporated, controls Wolfus's claims. *Vaughn v. LJ Int'l, Inc.*, 94 Cal. Rptr. 3d 166, 175 (Ct. App. 2009) ("Under the internal affairs doctrine, the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated." (internal quotation marks omitted)). British Columbia law requires a corporate shareholder to apply for leave of the court of that jurisdiction before filing a derivative action, and requires the shareholder to provide notice of such application to the company and demand that the directors take remedial action prior to commencement of the suit. Business Corporations Act, R.S.B.C. 2002, c. 57 §§ 232(2)(a) & 233(1)(a)-(b). The failure to obtain leave of court is fatal under British Columbia common law.

*Bruneau v. Irwin Indus. (1978) Ltd.*, 2002 CarswellBC 1107, para. 19 (Can. B.C.S.C.) (WL) ("[W]here an action [is] in fact a derivative action but commenced without leave, the appropriate remedy [is] to strike it as disclosing no reasonable claim.").

For his part, Wolfus concedes that if his claims are derivative, they are also subject to an effective pre-suit demand requirement which he failed to satisfy. Failure to comply with such a requirement is equally fatal to his complaint. *Vaughn*, 94 Cal. Rptr. 3d at 171-72 (holding a pre-suit demand requirement imposed by the British Virgin Islands Business Companies Act of 2004 imposed a substantive requirement determining whether a shareholder had standing to sue). Wolfus also appears to acknowledge that he is barred from asserting a derivative claim as a result of Midway's bankruptcy.

Having rejected Wolfus's main contention that his claims are direct, rather than derivative, we agree with the district court's initial determination that it lacked subject matter jurisdiction to adjudicate Wolfus's claims, because Wolfus lacked standing to assert them. Accordingly, we conclude that the district court was correct to initially dismiss Wolfus's claims against the Directors on a jurisdictional basis, and the court's subsequent reversal in permitting Wolfus's claims to move forward was error. In light of the foregoing, we

ORDER the petition GRANTED AND DIRECT THE CLERK OF THIS COURT TO ISSUE A WRIT OF PROHIBITION instructing the

district court to vacate its order denying petitioners' motion to dismiss and to enter an order granting petitioners' motion to dismiss.[2]

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____

[2]Because we conclude that petitioners are entitled to a writ of prohibition in light of the district court's erroneous exercise of jurisdiction, NRS 34.320; *Fulbright & Jaworski LLP v. Eighth Judicial Dist. Court*, 131 Nev. 30, 35, 342 P.3d 997, 1001 (2015), we need not address petitioners' alternate request for mandamus relief.

SUPREME COURT
OF
NEVADA

(O) 1947A

20

cc:    Hon. Linda Marie Bell, Chief Judge
Hon. Nancy L. Allf, District Judge
Greenberg Traurig, LLP/Las Vegas
Holland & Hart LLP/Las Vegas
Holland & Hart, LLP/Denver
Moye White LLP
Santoro Whitmire
James R. Christensen
BleauFox
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

SILVER, J., with whom PICKERING, J. joins, concurring in part and dissenting in part:

I agree with the majority that the district court should have dismissed the first three causes of action in California-resident Wolfus's second amended complaint, since those claims are derivative in nature and are for the corporation to assert or decline, not Wolfus. However, the same cannot be said for Wolfus's fourth and fifth causes of action, which are grounded in common law fraud and misrepresentation. Further, as pleaded, these are direct, *not derivative*, claims under California law as espoused by *Small v. Fritz Companies*, 65 P.3d 1255 (Cal. 2003). Therefore, I respectfully concur in part and dissent in part.

Midway's Pan Gold Project (Pan) involved the company's intent to mine for gold at the northern end of the Pancake Mountains located in White Pine County, Nevada. In order to complete the project, Midway needed to secure permits from both the Bureau of Land Management and the Nevada Department of Environmental Protection. In May of 2010, Midway hired petitioner Brunk as its President and Chief Operating Officer, and by May of 2012, he ascended to become Chairman of the Board and Chief Executive Officer—ousting Wolfus. Wolfus alleged in his second amended complaint that Brunk, along with other named defendants (petitioners here), through the company, issued various press releases and SEC filings over the next two years that described in significant detail the method and manner by which Midway intended to mine gold in the Pancake Mountains. According to Wolfus, these releases and filings misrepresented that Midway had made significant progress in permitting and financing the project moving forward.

In fact, Wolfus distinctly pleaded that in a January 15, 2014, SEC press release, Midway reported that the Pan project was *"fully permitted and construction is underway with completion estimated for Q3 2014."* (Emphasis added). As a result, Wolfus exercised his stock option—purchasing 200,000 shares for $112,000 Canadian dollars, which was the equivalent of $100,636 U.S. dollars. Again, in March 12, 2014, Midway issued another press release stating that the Pan project was *fully permitted and that construction was underway.* Additionally, days later Midway issued another press release naming its mining contractor for the Pan project.

Wolfus alleged that on September 19, 2014, he again relied upon petitioners' continued misrepresentations through press releases and SEC filings and purchased another 1,000,000 shares of Midway stock—exercising his stock options for $860,000 Canadian dollars, which was then equivalent to $783,778 U.S. dollars. Finally, only six months later, by June of 2015, Midway announced that it had begun Chapter 11 bankruptcy proceedings. Soon after, the bankruptcy was converted from Chapter 11 reorganization to Chapter 7 liquidation.

Wolfus alleged fraud and negligent misrepresentation by petitioners in his second amended complaint, highlighting that but for petitioners' fraud and or negligent misrepresentations regarding the Pan project's permits and financing (neither of which actually occurred), Wolfus would not have held onto his stock and would have sold it, and, moreover, he would not have exercised stock options in *purchasing* stock. Specifically, Wolfus alleged that he would have sold his existing stock around February 14, 2014, when Midway shares peaked at $1.39.

This court disfavors granting writ petitions that challenge the denial of a motion to dismiss. *Buckwalter v. Dist. Court*, 126 Nev. 200, 201, 234 P.3d 920, 921 (2010); *State v. Thompson*, 99 Nev. 358, 361-62, 662 P.2d 1338, 1340 (1983). We review de novo the decision to dismiss a complaint under NRCP 12(b)(1), resolving factual disputes in favor of the plaintiff where the plaintiff makes a prima facie showing of jurisdiction, supported by competent evidence. *Viega GmbH v. Eighth Judicial Dist. Court*, 130 Nev. 368, 374, 328 P.3d 1152, 1156 (2014).

Midway and its representatives (petitioners) were responsible for Midway's press releases and SEC filings. The releases and filings publically claimed that Midway was fully permitted to mine for gold and that the company successfully obtained financing in moving forward with the Pan project. Midway cannot sue itself for its own fraud and misrepresentation. Fraud and misrepresentation as pleaded by Wolfus reflect a direct claim pursuant to common law.

In *Small*, the California Supreme Court held that California law authorizes a direct, as opposed to derivative, claim to a shareholder who alleges that they were wrongfully induced to hold stock instead of selling it. 65 P.3d at 1260, 1266. Therefore, a shareholder may properly bring a common law action for fraud or misrepresentation if that shareholder makes a bona fide showing of actual reliance upon the misrepresentations. *See id.* at 1266.

My review of the 47 pages of the second amended complaint in this case reveals that Wolfus sufficiently alleged a personal holder claim, which is a direct claim under California law. More importantly, Wolfus additionally alleged that because of petitioners' fraud or negligent misrepresentations in claiming the Pan project was "fully permitted" and

SUPREME COURT
OF
NEVADA

(O) 1947A

3

financed, he *purchased* almost a $1,000,000 US stock—when in actuality, Midway was never fully permitted, nor was it financed, which ultimately resulted in Midway's bankruptcy. Most certainly, Wolfus's "purchaser claims" are direct claims that are personal to him. In my view, the majority broadly and in a conclusory fashion opines that the "gravamen" of Wolfus's second amended complaint is derivative in nature. Not only does the majority fail to properly analyze the specifically pleaded holder claims involving *affirmative* acts of alleged fraud and misrepresentation, but it completely ignores specifically pleaded purchaser claims. These purchaser claims are clearly personal to Wolfus, not to all shareholders. How can the allegation that Wolfus purchased 1,000,000 shares of Midway Stock for $860,000 Canadian dollars, equivalent to $783,778 U.S. dollars, on September 19, 2014, based on fraud and misrepresentations by the petitioners regarding the project being fully permitted, be derivative in nature—as opposed to personal to Wolfus? This is *not*, as the majority claims, a cause of action for general mismanagement leading to the demise of the corporation for which all shareholders seek redress.

I do not disagree with those critical of "holder" claims who underscore that Wolfus has a long row to hoe to prove fraud and negligent misrepresentation, as "holder" claims may be quite speculative in nature and involve very complex questions of proof and damages. But that is not our concern. Here, this court is tasked with entertaining a writ petition involving a district court's denial of a motion to dismiss pursuant to NRCP 12(b)(5). In *Citigroup Inc. v. AHW Investment Partnership*, 140 A.3d 1125 (Del. 2016), the Delaware Supreme Court emphasized that difficulties proving a holder claim do not affect its status as a direct claim, and further noted that purchaser claims are direct as well:

SUPREME COURT
OF
NEVADA

(O) 1947A

4

Finally, whatever analytical problems are involved in recognizing the Holder Claims as a species of common law fraud claim or negligent misrepresentation claim do not turn those Holder Claims into claims belonging to the issuer who is the primary defendant, or into claims governed by the internal affairs doctrine. As discussed above, *holder claims are analytically indistinct from seller and purchaser claims, which are direct claims that are personal to the holder.* Purchaser, seller, and holder claims all involve very difficult questions of proof and damages, and holder claims just entail proving the additional requirement of inducement. This admittedly can be said to compound, not just marginally add to, those complex questions of proof and damages. That is, a holder claim plaintiff must prove that she would have sold her securities in some particular time period had she had certain information at that time. Because securities holders may decide whether to hold or sell stock for various reasons, proving inducement is difficult. *The speculation arguably inherent in this added element has led states to be rightly cautious about creating broad causes of action for securities holders, as opposed to sellers or purchasers, a caution our state law has shared. That issue, however, does not transmogrify a common law fraud or negligent misrepresentation claim belonging to the security holder under state law into one belonging to the issuer.*

*Id.* at 1140-41 (footnotes and citations omitted) (emphasis added).

Based on the foregoing, I would deny petitioners' writ. In my view, the district court properly denied petitioners' motion to dismiss Wolfus's second amended complaint regarding counts 4 and 5, alleging

fraud and negligent misrepresentation. Both causes of action are direct claims, personal to Wolfus, and he pleaded them with enough specificity to survive a motion to dismiss.

_____, J.
Silver

I concur:

_____, J.
Pickering